**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAMES R.,

                        Plaintiff,

          v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                     Defendant.

_____

No. 8:17-CV-0675
(CFH)

**APPEARANCES:**

Schneider & Palcsik
57 Court Street
Plattsburgh, New York 12901
Attorney for plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**OF COUNSEL:**

MARK A. SCHNEIDER, ESQ.

KATHRYN S. POLLACK, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

      Plaintiff James R. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("Commissioner") denying his

application for supplemental security income ("SSI") payments.  Dkt. No. 1 ("Compl.").[1]

_____

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 6.

Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 13, 14. For the following reasons, the determination of the Commissioner is affirmed.

## I. Relevant Background

## A. Factual Background

Plaintiff was born in 1972. T. 130.[2] At the time of his application, plaintiff was forty years old. Id. Plaintiff previously worked as a self-employed manual laborer, "peer specialist/driver" at the Mental Health Association in Essex County, and as a self-employed artist making rustic furnishings. Id. at 47, 81-84. Plaintiff alleged disability consisting of spinal injury, protruded discs in back, pinched nerve in back, arthritis in back, generalized anxiety disorder, major depression, hypertension, asthma, and right shoulder injury. Id. at 130-31.

## B. Procedural Background

On February 20, 2014, plaintiff protectively filed a Title XVI application for supplemental security income. T. 232-39. Plaintiff alleged disability beginning on June 1, 2013. Id. at 232. Plaintiff's claim was initially denied on April 30, 2014. Id. at 158-63. Plaintiff requested a hearing, and a hearing was held on September 2, 2015 before Administrative Law Judge ("ALJ") John G. Farrell. Id. at 71-129, 167-69. ALJ Farrell

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act since February 20, 2014, the date the application was filed." Id. at 16. The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-7. Plaintiff commenced this action on June 22, 2017. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the

Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subject complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart,

No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur

v. Heckler, 722 F.2d 1033, 1037) (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to

establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80

(2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the

burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere. See id. at 1180 (citing Berry, 675 F.2d at 467).

When a claimant alleges a mental impairment, the ALJ is required to engage in a "special technique" or "psychiatric review technique" at steps two and three of the sequential analysis, set forth in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e), 416.920a(b)-(e); Petrie v. Astrue, 412 F. App'x 401, 403 (2d Cir. 2011) (summary order); Showers v. Colvin, 13-CV-1147 (GLS/ESH), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (citing Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008)). This technique "helps administrative judges determine at Step 2 of the sequential evaluation whether claimants have medically-determinable mental impairments and whether such impairments are severe." Showers, 2015 WL 1383819, at *4. Thus, under this technique, an ALJ is to assess the "functional effects of mental impairments . . . . Administrative law judges assessing residual functional capacity 'cannot simply rely on the limitations articulated in the severity analysis . . . , but must instead provide a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." Id. (quoting Ladue v. Astrue, No. 12-CV-600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y. Feb. 1, 2013) (additional internal quotation marks and emphasis omitted).

Next, an ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on her "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c). The ALJ must assess the plaintiff's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence, and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must "rate" the

functional degree of limitation in each of these four areas as "[n]one, mild, moderate, marked [or] extreme." Id. at §§ 404.1520a(c)(4), 416.920a(c)(4).  If the ALJ finds the degree of limitation in each of the first three areas to be "mild" or better and identifies no episodes of decompensation, the ALJ "will generally conclude" that the plaintiff's impairment is "not severe." Id. § 404.1520a(d)(1).  Where the plaintiff's mental impairment is "severe," the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2).  "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408 (quoting 20 C.F.R. § 404.1520a(d)(2)).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 20, 2014, the application date.  T. 18.  The ALJ found at step two that plaintiff had the severe impairments of degenerative disc disease, mid and low back lumbar radiculopathy, lumbar facet arthopathy, obesity, asthma, major depressive disorder, generalized anxiety disorder, borderline personality disorder, obsessive-compulsive disorder (OCD), and impulse control disorder.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 19.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined 20 C.F.R. 416.967(b) except [he]
> can occasionally perform all posturals; can occasionally

> operate bilateral foot controls and pushing/pulling with bilateral lower extremities; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extremes in temperatures and a very loud noise; and can perform simple, routine repetitive tasks with simple decision making and infrequent workplace changes gradually introduced with no fast-paced production work.

Id. at 21. At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. Id. at 34. At step five, relying on the testimony of a vocational expert, the ALJ concluded that, considering the plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform. Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, since February 20, 2014, the date the application was filed." Id. at 35.

## D. The Parties' Arguments

Plaintiff first argues that the ALJ erred by granting more weight to the consulting sources rather than plaintiff's treating physicians and other treating sources. Dkt. No. 13 at 20-27. Second, plaintiff argues that he was disabled by his combination of degenerative disc disease, mid and low back lumbar radiculopathy, lumbar facet arthopathy, obesity, asthma, major depressive disorder, generalized anxiety disorder, borderline personality disorder, obsessive-compulsive disorder (OCD), impulse control disorder, and a cognitive disorder. Id. at 27-33. Third, plaintiff argues that the ALJ erred by not crediting plaintiff's testimony. Id. at 33-36. Finally, plaintiff argues that the ALJ erred by finding that plaintiff could perform work as a parking lot attendant, storage rental clerk, or an usher. Id. at 36-

38.  Conversely, the Commissioner argues that the Commissioner's decision is supported by substantial evidence, and should be affirmed.  <u>See</u> generally Dkt. No. 14.

### E. RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  <u>See</u> <u>Martone</u>, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  <u>Martone</u>, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  <u>See</u> <u>New York v. Sullivan</u>, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1999).

The ALJ found that plaintiff could

> perform light work as defined 20 C.F.R. 416.967(b) except [he] can occasionally perform all posturals; can occasionally operate bilateral foot controls and pushing/pulling with bilateral lower extremities; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extremes in temperatures and a very loud noise; and can perform simple, routine repetitive tasks with simple decision making and infrequent workplace changes gradually introduced with no fast-paced production work.

T. 21.  The regulations define light work as work that

9

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).


## 1. Physical Impairments

In rendering the RFC determination, the ALJ relied primarily on the consultative orthopedic examination by Dr. Nader Wassef.  T. 25-26, 800-04.  Plaintiff reported that he experienced mid and lower back pain since June 2013 when he injured his back.  Id. at 800.  He completed physical therapy for about six months, and stated that he still experienced back pain that radiated to both hips.  Id.  X-rays established that he had bulging discs at T8-T9 and L3-L4, protruding discs, pinched nerves, and radicular symptoms.  Id. at 801.  He reported a history of asthma precipitated by weather changes, mold, wood dust, and certain solvents.  Id. at 800.  He reported no hospitalizations or ER visits because of asthma in the past five years.  Id.  Plaintiff reported that he cooked biweekly, cleaned once per month, did his laundry once every three months, but noted that these activities had "curbed dramatically" since his injury, and that they were "very difficult" to complete.  Id. at 802.  He showered once per week, and dressed himself daily.  Id.  He enjoyed watching television, listening to the radio, reading, and going out for walks.  Id.

10

After a physical examination, Dr. Wassef noted that plaintiff appeared to be in no acute distress.  T. 802.  His gait was normal, and he could walk on his heels and toes without difficulty.  Id.  His squat was normal, and he did not use assistive devices or need help changing for the examination.  Id.  Plaintiff's hand and finger dexterity was intact, and his grip strength was 5/5 bilaterally.  Id.  He had full range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles.  Id. at 802-03.  Plaintiff exhibited no joint inflammation, effusion, or instability.  Id. at 802.  Dr. Wassef indicated no muscle atrophy, no sensory abnormality, and that his reflexes were physiologic and equal.  Id. at 803.  Dr. Wassef diagnosed plaintiff with asthma, hypertension, alcoholism (in remission), polysubstance abuse (in remission), major depressive disorder, generalized anxiety disorder, post-nasal discharge, myopia, Meniere's disease, dry eyes, mid and lower back pain and lumbar radiculopathy, and past history of seizures.  Id.  Dr. Wassef opined that plaintiff "should not be exposed to extremes in temperature, second-hand smoke, perfumes, chemicals, or any type of respiratory irritants.  Id.  He indicated that plaintiff had moderate limitations in standing, walking, lifting, ascending and descending stairs, bending, squatting, and operating foot controls.  Id. at 803-04.

The ALJ granted "significant weight" to Dr. Wassef because he was "an examining physician and [his] findings are consistent with other medical evidence of record."  T. 26. As the Commissioner argues, Dr. Wassef's opinion was consistent with the treatment notes of Dr. Pasqualino Caputo, plaintiff's primary care provider, who indicated generally unremarkable observations, including that plaintiff was not in acute distress, had normal station and gait, intact sensation and motor behavior, a negative straight leg raise, and

normal reflexes.  See T. 757-58, 763, 768, 773, 778, 831-32, 846-47; see also id. at 25 (discussing plaintiff's generally unremarkable physical examinations).  Further, records from plaintiff's pain management consultations also depict many normal findings, including that plaintiff appeared in no acute distress, and that he exhibited negative increased low back pain with lumbar flexion, negative increased leg pain with lumbar spine flexion, negative Patrick's (FABERE) test, negative slump test, and a negative straight leg test. See id. at 816, 820, 824.

Moreover, courts have found that an ALJ may rely on a plaintiff's medical records indicating an improvement in pain due to treatment.  See Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) (relying on "four pieces of evidence in the record" supporting the conclusion that plaintiff's pain had improved with treatment).  Here, plaintiff's medical records demonstrate that plaintiff reported that prescribed medication and physical therapy improved the pain in his back.  See T. 765 ("[T]aking gabapentin 600mg once daily, naproxen 500 twice daily and flexerll[;] taking buspar 3 times daily and feeling better with this[.]"); 770 ("[H]as started PT for condition and is improving a little[.]"); 815 (noting that although plaintiff has "constant pain," [m]edications do help his pain[.]"); 937 ("He reports having positive results of cortisone injections in his back is allowing him to function a little better with less pain.").  As the Commissioner also indicates, plaintiff's medical records demonstrate that after his June 18, 2014 medial branch block procedure, he did not present again for pain management until March 16, 2015.  See T. Dkt. No. 14 at 9.  Such failure to seek regular treatment "seriously undermines" plaintiff's disability claim.  See Miller v. Comm'r of Soc. Sec., No. 5:16-CV-0942 (TWD), 2017 WL 4286295,

at *5 (N.D.N.Y. Sept. 26, 2017) (citing Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008) (summary order) (claims of total disability were undermined by the plaintiff's failure to seek regular treatment for his allegedly disabling condition); Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (holding that while a failure to seek medical attention does not "necessarily" preclude a finding of disability, it "seriously undermines" a disability claim)).  When plaintiff did return to pain management in March 2015, he noted "some late onset relief that started a couple months after the injections."  T. 819.  Although he still experienced lumbar pain, he did "not describe[e] any radiation of pain, numbness or tingling."  Id. at 820.  Plaintiff underwent another series of medial branch block injections in May 2015, and indicated a "40% reduction in his low back pain since having the injection."  Id. at 822-25.  Moreover, plaintiff reported that he "got a Schiatzu massage chair" that "work[ed] extremely well in helping to reduce his pain."  Id. at 824.  He also noted he was prescribed a muscle relaxer and NSAIDS through his primary care provider.  Id.  Plaintiff indicated that since the March 2015 medial branch block injections, "he ha[d] been able to increase his physical activity level" and "walked around a track 3 times at the fairgrounds near his home."  Id.  He stated that he had been previously unable to perform this type of physical activity.  Id.

Plaintiff argues that the "ALJ erred by not giving controlling weight to the well-supported opinion of long time primary care physician, Dr. Caputo."  Dkt. No. 13 at 25.  He contends that the ALJ should have concluded that plaintiff was unable to perform any work based on Dr. Caputo's October 14, 2015 medical source statement.  Id.  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Id. (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013)) (summary order). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Id. (quoting Burgess, 537 F.3d at 129-30).

The ALJ granted Dr. Caputo's medical source statement "light weight" because the "longitudinal duration of treatment or symptoms was not specified, and treatment records lack basis for findings expressed." T. 33. The ALJ assessed Dr. Caputo's opinion that plaintiff could sit for one hour, stand for one hour, and walk for twenty minutes at a time without interruption, and sit for two hours, stand for two hours, and walk for one hour total

in an eight-hour work day, and found these limitations inconsistent with the other medical evidence in the record, including his own treatment notes that depicted generally normal observations. See id. at 33, 987. As the Commissioner points out, Dr. Caputo failed to indicate what medical or clinical findings he based his opinion on. Id. at 987. As discussed above, Dr. Caputo's limitations are inconsistent not only with Dr. Wassef's observations and medical opinion that plaintiff only had moderate limitations, but they are also inconsistent with his own treatment notes, and other substantial evidence in the record.

Additionally, the ALJ's RFC determination is supported by plaintiff's "ability to perform a wide range of more than adequate activities of daily living." T. 33. The record demonstrates that plaintiff informed at least one medical provider that he was "independent in all of his activities of daily living and is able to manage his own medications, shop, cook, and manage his finances without issue." Id. at 973. Plaintiff also reported exercising, moving to New Jersey for several months to care for his parents, attending a wedding in New Jersey, traveling to Plattsburgh "a couple times" to visit a comic book store, visiting the library three days a week to sell items on Amazon, and attending church functions. See id. at 105, 824, 885, 887-88, 897. Although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court finds such activities are consistent with Dr. Wassef's opinion that plaintiff suffered from moderate

physical limitations, rather than the more restrictive limitations set forth in Dr. Caputo's medical source statement.  Thus, the Court finds that it was reasonable for the ALJ to rely on Dr. Wassef's medical opinion in assessing plaintiff's physical limitations.  Dr. Wassef observed clinical findings similar to those contained in Dr. Caputo's treatment records, and opined that plaintiff had moderate limitations in standing, walking, lifting, ascending and descending stairs, bending, squatting, and operating foot controls.  Compare T. 803-04 (Dr. Wassef's physical examination notes) with T. 757-58, 763, 768, 773, 778, 831-32, 846-47 (Dr. Caputo's treatment notes).

Moreover, contrary to plaintiff's allegations, see Dkt. No. 13 at 26, the ALJ properly assessed plaintiff's MRI results in combination with other medical evidence in the record to determine a RFC based on plaintiff's physical limitations.  See T. 25, 790-91.  As the Commissioner suggests, "[w]hile [p]laintiff may have weighed the evidence in the record differently than the ALJ, or drawn different factual inferences from the evidence, that is not a basis for reversal."  Rapaport v. Comm'r of Soc. Sec., No. 16-CV-2617 (VSB) (JCF), 2018 WL 3122056, at *4 (S.D.N.Y. June 26, 2018) (citing Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Plaintiff's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.")).

The Court concludes that the ALJ properly weighed the medical evidence in the record in determining plaintiff's RFC as to his physical impairments, and that the RFC determination is based on substantial evidence.  To the extent that plaintiff argues that the ALJ erred by granting more weight to the medical opinions of the consultative examiners than to his treating physicians, the Court disagrees.  It is well-settled that "a consultative

examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." Colbert v. Comm'r. of Soc. Sec., ___ F. Supp. 3d ___, 2018 WL 3042069, at *10 (S.D.N.Y. 2018) (citing inter alia Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence)). To the extent that evidence in the record suggests that plaintiff's pain symptoms are susceptible to more than one interpretation, it is well-settled that the determination of the Commissioner must be upheld, "'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" Weather v. Astrue, 32 F. Supp. 3d 363, 368 (N.D.N.Y. 2012) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

### 2. Mental Impairments

In rendering the RFC determination, the ALJ relied on the medical opinions of mental health counselors Dorian Gossy and Stephen Feinbloom, as well as the medical opinion of Dr. Carly Melcher, Psy.D.  T. 26-34, 794-99, 857-70.  On April 22, 2014, plaintiff presented to Dr. Melcher for a consultative psychiatric evaluation. Id. at 794-99.  Plaintiff reported experiencing "dysphoric moods, fatigue and loss of energy, feeling overwhelmed and like he ha[d] weight on his shoulders, as well as low motivation." Id. at 795.  Dr. Melcher indicated that plaintiff was cooperative and related adequately.  Id. at 796. Plaintiff's speech was fluent and clear, and his expressive and receptive language was adequate.  Id.  Plaintiff's thought process was coherent and goal directed with no evidence

of hallucinations, delusions, or paranoia in the evaluation setting.  Id.  Although his affect was dysphoric and anxious, his sensorium was clear.  Id.  Dr. Melcher stated that plaintiff's attention and concentration were "mildly impaired due to anxiety and nervousness in the evaluation as well as emotional distress due to depression and anxiety."  Id.  Plaintiff was able to count, but he struggled with simple calculations and serial 3s.  Id.  Dr. Melcher stated that plaintiff's recent and remote memory skills were "mildly impaired due to anxiety and nervousness in the evaluation."  Id.  He noted that plaintiff was able to recall three objects immediately, but could only recall two after five minutes.  Id.  He was able to recall "digits forward up to 5 and backward to 4."  Id.  Plaintiff's cognitive functioning was average, and his general fund of information was "appropriate to experience."  Id. at 797.  Plaintiff's insight and judgment were described as "fair to poor."  Id.

In the medical source statement accompanying the examination, Dr. Melcher opined that plaintiff was

> able to follow and understand simple directions and instructions and perform simple tasks independently.  He has mild-to-moderate limitation maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks.  He has mild-to moderate limitation making appropriate decisions.  He is able to relate adequately with others.  Mild-to-moderate limitation appropriately dealing with stress.  Difficulties are caused by anxiety and depression.

> The results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis.

T. 797.  Dr. Melcher diagnosed plaintiff with generalized anxiety disorder; major depressive disorder, recurrent; unspecified impulse control disorder; history of alcohol dependence

and marijuana dependence, both in full remission; rule out specific learning disability; and relationship issues related to codependency. Id. at 798. Dr. Melcher recommended that plaintiff continue with psychological treatment as currently provided, and indicated that plaintiff could benefit from vocational training. Id. Dr. Melcher noted that plaintiff's prognosis was "fair given [his] symptomology." Id. The ALJ gave Dr. Melcher's opinion "significant weight in assessing [plaintiff's] functional capacity because this is an examining physician and findings are consistent with other medical evidence." Id. at 27.

Dr. Melcher's opinion is consistent with the Medical Examination for Employability forms of Ms. Gossy, wherein she indicated that plaintiff suffered from generalized anxiety disorder, major depressive disorder and dependent personality disorder. T. 872, 881. Ms. Gossy indicated that plaintiff was moderately limited in his ability to understand and remember instructions, carry out instructions, maintain attention and concentration, make simple decisions, and function in a work setting at a consistent pace. Id. at 882. She indicated that plaintiff had no limitations in interacting appropriately with others, maintaining socially appropriate behavior, and maintaining basic standards of personal hygiene and grooming. Id. Ms. Gossy opined that, taking into consideration his physical, mental and addiction limitations, plaintiff would "not do well in a loud, crowded work environment nor in a fast-paced work place. Solitary task-oriented activities may be best." Id. In September 2014, Ms. Gossy opined the same moderate limitations and opinion on those limitations regarding plaintiff's work activities. Id. at 873. The ALJ afforded Ms. Gossy's opinion "some weight" because she "personally saw [plaintiff] on a regular basis and [ ] her assessments [were] consistent with other treating physicians[.]" Id. at 29. The ALJ

acknowledged that "[a]lthough Ms. Gossy [was] not an acceptable medical source pursuant to the Social Security Regulations, [he] may consider [her] assessments along with the objective evidence in the record." Id. at 29.

Dr. Melcher and Ms. Gossy's opinions are also consistent with Mr. Feinbloom's Medical Examination for Employability form and treatment notes, which the ALJ afforded "significant weight." T. 32. On January 23, 2015, Mr. Feinbloom noted that although he found it "very, very difficult to get more than a vague response or platitude from" plaintiff, he concluded that plaintiff "should be able to work and perhaps even benefit from the experience of regular interaction with others and earning his own keep." Id. at 907. On March 4, 2015, plaintiff reported that he felt "things [were] going well by his own report," and stated that he was "doing good. Relieved by the closing on the house. Minimal suicidal ideation. It's only fleeting. Less frequent anxiety." Id. at 899. Mr. Feinbloom's treatment notes also indicate that plaintiff rated his depression as "4/10," and reported that he "fe[lt] safe." Id. at 893. On April 24, 2015, plaintiff reported that after spending three weeks in New Jersey, he had "some good contacts with old friends and family," and contemplated moving back there. Id. at 891. Less than one month later, plaintiff reported that his depressive bouts were further apart and that his self-esteem had improved. Id. at 889. On January 23, 2015, Mr. Feinbloom completed a Medical Examination for Employability form for Essex County Department of Social Services indicating that plaintiff did not have evidence of limitations in understanding and remembering instructions, carrying out instructions, maintaining attention or concentration, interacting appropriately with others, maintaining socially appropriate behavior, maintaining basic standards of

personal hygiene, or functioning in a work setting at a consistent pace.  Id. at 860.  Mr. Feinbloom also indicated that plaintiff was moderately limited in making simple decisions. Id.  However, three weeks later, on February 10, 2015, Mr. Feinbloom completed a form entitled "Serious and Persistent Mental Health Illness Certification Form," wherein he checked boxes indicating that plaintiff had marked difficulties in self-care, marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  Id. at 867.

As the ALJ indicated, in a letter dated August 6, 2015, Mr. Feinbloom stated that plaintiff had not been seen at the clinic since May 27, 2015, and that plaintiff had no further appointments scheduled.  T. 858.  Mr. Feinbloom noted that he did not feel comfortable completing a medical source statement because he had not met with the plaintiff in months.  Id.  However, he referred to the January 23, 2015 Medical Examination for Employability form discussed supra, and stated that "[a]t that time, [plaintiff] demonstrated a capacity to follow instructions, carry out instructions, attend to tasks, interact with others, behave appropriate, maintain his own hygiene and function at a consistent pace."  Id.  Mr. Feinbloom noted that plaintiff "might have difficulty with decision making and tolerating challenges," and that "[h]e should choose his employment with care."  Id.

The Court concludes that the ALJ's reliance on the medical opinions of Dr. Melcher, Ms. Gossy, and Mr. Feinbloom are consistent with his RFC determination that plaintiff can perform "simple, routine repetitive tasks with simple decision making and infrequent workplace changes gradually introduced with no fast-paced production work," and that the

RFC determination is based on substantial evidence.  T. 21.  To the extent that plaintiff argues that the ALJ should have given more weight to Mr. Feinbloom's February 10, 2015 checkbox form, Mr. Feinbloom's assessment that plaintiff demonstrated marked difficulties is inconsistent with his own treatment notes, as well as the limitations set forth in the January 23, 2015 Medical Examination for Employability form completed three weeks prior.  See Dkt. No. 13 at 25.  Moreover, in lieu of completing a more recent medical source statement, Mr. Feinbloom, in the August 6, 2015, letter directed attention to the limitations, if any, set forth in the January 23, 2015 form.  See T. 858.

Insofar as plaintiff contends that the ALJ erred by not granting greater weight to the medical opinion of clinical neuropscholoist Dr. Durant, the Court agrees with the argument set forth by the Commissioner.  The ALJ provided a lengthy discussion of Dr. Durant's neuropsychological examination and findings, and afforded his medical opinion "some weight in assessing [plaintiff's] functional capacity because this is an examining physician and findings are consistent with other medical evidence of record."  T. 33.  As the Commissioner notes, the ALJ's RFC determination accounted for the memory difficulties that Dr. Durant opined.  See Dkt. No. 14 at 19; T. 21, 972-82.  Moreover, although Dr. Durant observed some severe impairments during executive functioning tests, a majority of the tests showed results in the average or mildly-to-moderately impaired range.  See T. 976-78.  The Court notes that plaintiff reported that he was "independent in all of his activities of daily living and [was] able to manage his own medications, shop, cook and manage his finances without issue."  Id. at 973.

In addition, as to plaintiff's contention that "[t]he ALJ erred by not finding that [Dr.

Durant's diagnosis of major neurocognitive disorder] was a severe impairment," Dkt. No. 13 at 30, the Court agrees with the Commissioner that such error is harmless as the ALJ discussed Dr. Durant's evaluation at length and considered plaintiff's neurological and memory issues in determining plaintiff's RFC.  See Dkt. No. 14 at 20; see also Fontanez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127247, at *15 (E.D.N.Y. Sept. 28, 2017) (quoting Calixte v. Colvin, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *22 (E.D.N.Y. Mar. 31, 2016)) ("Where an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps."); Medrano v. Colvin, No. 15-CV-3081 (MKB), 2016 WL 5255877, at *13 n.2 (E.D.N.Y. Sept. 21, 2016) ("To the extent that Plaintiff does challenge the decision as to her mental impairment, that decision would at most constitute harmless error at step two of the five-step sequential process, where the ALJ recognized other severe impairments and considered Plaintiff's mental health limitations in determining her RFC.").

Thus, the Court concludes that the ALJ properly weighed the medical evidence in the record in determining plaintiff's RFC as to his mental impairments, and that the RFC determination is based on substantial evidence.  As such, remand on this issue is not required.

**F. Listings**

Plaintiff next argues that he is disabled at step two because his impairments met or medically equaled certain listed impairments. See Dkt. No. 13 at 27-32. A plaintiff will be found disabled if the individual has an impairment or combination of impairments that meets or equals one of the Listings, and meets the duration requirement. 20 C.F.R. § 404.1520(d). The burden is on the plaintiff to present medical findings that his or her impairments match a Listing or are equal in severity to a Listing. See Davis v. Astrue, No. 6:09-CV-0186 (LEK/GHL), 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals all of the specified medical criteria. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (superseded by statute on other grounds). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Id. Additionally, while an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Berry, 675 F.2d at 469.

As to his mental disorders, plaintiff contends that the source statement of Mr. Feinbloom establishes that plaintiff is disabled by major depressive disorder, generalized anxiety disorder, borderline personality disorder, obsessive-compulsive disorder (OCD), and impulse control, and that he meets the "B" criteria of mental health listings 12.04 and 12.06. See Dkt. No. 13 at 29. However, as the Commissioner argues, plaintiff's argument

seems to suggest that the ALJ should have based his step two determination on Mr. Feinbloom's source statement alone, absent consideration of other medical evidence in the record. See Dkt. No. 14 at 21. As stated above, the marked limitations set forth in Mr. Feinbloom's February 10, 2015 checkbox form are inconsistent with his own treatment notes, as well as the limitations set forth in the January 23, 2015 Medical Examination for Employability form completed three weeks prior. See discussion II.E.2. supra, at 20-22.

Contrary to plaintiff's assertions, there is substantial evidence to support the ALJ's finding that the record does not contain the requisite medical evidence to show that plaintiff was medically disabled as a result of his mental disorders. The majority of evidence in the record assessing plaintiff's mental disorders demonstrate mild to moderate limitations that are consistent with the ALJ's determination that the "paragraph B" criteria were not satisfied, and that plaintiff had mild restrictions in activities of daily living; and mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace are supported by substantial evidence in the record. See T. 19-21,796, 860, 881, 976-78. The ALJ relied on plaintiff's reported activities of daily living which included grocery shopping, biweekly cooking, cleaning once a month, showering, and drawing, as well as his positive relationships with family and other people he came into contact with. Id. at 19-21,104, 797, 973. Thus, the Court finds that the ALJ did not err in determining that plaintiff was not disabled pursuant to Listings 12.04 and 12.06.

Insofar as plaintiff argues that although he "does not appear to meet the Listing for spinal impairment at Listing 1.04[,] . . . he does appear to equal that Listing," Dkt. No. 13 at 32 (emphasis in original), the Court finds that the ALJ properly assessed plaintiff's

moderate limitations in standing, walking, lifting, ascending and descending stairs, bending, squatting, and operating foot controls in concluding whether such limitations medically equaled a Listing and in determining plaintiff's RFC. See T. 757-58, 763, 768, 773, 803-04, 831-32, 846-47; see also discussion II.E.1. supra, at 14-16.

For all of the above reasons, the Court finds that the ALJ's determination regarding the Listings are supported by substantial evidence.


## G. Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir.

1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  Weather, 32 F. Supp. 3d at 381 (citing Tejada, 167 F.3d at 776).  "In making a credibility determination, the ALJ must consider all of the evidence before him, including the claimant's testimony itself."  Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 113 (2d Cir. 2010) (summary order) (citing SSR 96-7p, 1996 WL 374186, at *5).

Plaintiff argues that the ALJ erred in failing to "sufficiently explain why he did not credit [plaintiff's] testimony regarding his limitations," and that if such testimony had been credited, the ALJ "would have had to determine that [plaintiff] was disabled."  Dkt. No. 13 at 36.  After a review of the evidence, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are only partly credible, as they are not substantiated or corroborated by any objective medical evidence."  T. 23.  Contrary to plaintiff's argument, the ALJ discussed why he found plaintiff's allegations to be not credible.  The ALJ stated that plaintiff's claims that it was painful to stand or carry items, that he lacked energy and motivation, and that he stayed in bed all day were inconsistent with his ability to use public transportation to get around and his contention that he had no change in his daily activities since February 2014.  Id. at 22, 277.  The ALJ also found plaintiff's testimony regarding his pain inconsistent with his statements that medication and attending AA meetings improved his symptoms, as well as his concession that "he was able to carry 25 pounds, could walk a mile and that walking sometimes helped his pain."  Id.  The ALJ further noted that plaintiff

27

"was able to perform many activities of daily living including preparing meals, washing dishes, [doing] laundry, and clean[ing] the house," and that he "watch[ed] three movies a week[;] was able to follow and understand movie plots[;] enjoyed drawing, listening to music and cooking[;] had an email account and sometimes sold items over the Internet, which he performed about six hours per week." Id. at 22-23, 103-05.  The ALJ's reliance, in part, on plaintiff's activities of daily living was not in error.  See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations.  Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Given the fact that the ALJ provided specific reasons supported by substantial evidence to support his adverse credibility finding, this Court sees no reason to depart from the ALJ's findings, which are generally entitled to deference on appeal.  See Weather, 32 F. Supp. 3d at 381.  For all the above reasons, the credibility determination is supported by substantial evidence.

## H. Step Five Determination

Plaintiff argues that he does not have the RFC to be a parking lot cashier, storage rental clerk, or an usher.  Dkt. No. 13 at 36-38.  The Court finds that the record suggests otherwise.  As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding.  See T. 995-96, 971.  Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all

constitute light work with the limitations set forth in the RFC, the Court finds that the step five determination is supported by substantial evidence. See id.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff James R.'s motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:      September 10, 2018
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge